David J. Bodney (006065)
Email: bodneyd@ballardspahr.com
Christopher Moeser (022604)
Email: moeserc@ballardspahr.com
BALLARD SPAHR LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400
Facsimile: 602.798.5595

Attorneys for Plaintiffs

*Of Counsel*:
David A. Schulz*
Jonathan Manes
Emily J. Barnet (law student intern)
Benjamin W. Graham (law student intern)
Media Freedom and Information Access Clinic
Yale Law School
P.O. Box 208215
New Haven, CT 06520
Telephone: (203) 432-9387
Facsimile: (203) 432-3034
Email:  dschulz@lskslaw.com

* *Pro Hac Vice* motion pending

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Guardian News & Media LLC; The Associated Press; *The Arizona Republic*, a division of Phoenix Newspapers, Inc.; KPNX-TV Channel 12, a division of Multimedia Holdings Corporation; KPHO Broadcasting Corporation; and Star Publishing Company d/b/a *Arizona Daily Star*,<br><br>            Plaintiffs,<br><br>    vs.<br><br>Charles L. Ryan, Director of the Arizona Department of Corrections; and Thomas C. Horne, Arizona Attorney General,<br><br>            Defendants. | NO.<br><br>**COMPLAINT FOR VIOLATIONS OF 42 U.S.C. § 1983 AND EQUITABLE, INJUNCTIVE, AND DECLARATORY RELIEF** |

> **To determine whether lethal injection executions are fairly and humanely administered, or whether they ever can be, citizens must have reliable information about the . . . [']procedures,' which are invasive, possibly painful and may give rise to serious complications. This information is best gathered first-hand or from the media, which serves as the public's surrogate.**

*Cal. First Amendment Coal. v. Woodford*, 299 F.3d 868, 876 (9th Cir. 2002).

Plaintiffs, by and through their attorneys, allege and state as follows:

## PRELIMINARY STATEMENT

1. The First Amendment to the United States Constitution guarantees the public an affirmative right of access to certain government proceedings and related records. Executions are one such proceeding; information about the method of execution is one such record. Plaintiffs Guardian News & Media LLC ("Guardian US"), The Associated Press ("AP"), *The Arizona Republic*, KPNX-TV Channel 12 ("KPNX"), KPHO Broadcasting Corporation ("KPHO"), and Star Publishing Company ("The Star") bring this action pursuant to 42 U.S.C. § 1983 to vindicate the public's right of access to executions, significant portions of which have been carried out by the State of Arizona in secret. By withholding information about the source, composition, and quality of the drugs it uses for lethal injection executions, as well as the qualifications of those chosen to administer the drugs, the State of Arizona has closed critical governmental proceedings that have historically been open to the public and undermined the public's ability to ensure the positive functioning of government.

## INTRODUCTION

2. In 1930, the State of Arizona executed Eva Dugan by hanging at the gallows. The noose around her neck snapped too tightly as she dropped through the trap door and she was decapitated. Witnesses to the execution, five of whom fainted, were appalled. *See* Claudette Simpson, *Eva Dugan: The First—And The Last—Woman To Be Hanged in Arizona*, THE PRESCOTT COURIER (Mar. 27, 1979).

3. Public pressure pushed the State of Arizona to adopt a more humane mode of execution. The State of Arizona instituted the gas chamber in 1934.

4. In 1992, the State of Arizona executed Donald Eugene Harding using lethal gas. Harding's execution was unexpectedly macabre. Members of the media who witnessed his execution "described a gruesome scene: Mr. Harding gasping, shuddering and desperately making obscene gestures with both strapped-down hands." *Gruesome Death in Gas Chamber Pushes Arizona Toward Injections*, N.Y. TIMES (Apr. 25, 1992).

5. The people of Arizona adopted lethal injection by constitutional amendment in November 1992. *See* Ariz. Rev. Stat. Const. Art. XXII § 22.

6. In 2014, the State of Arizona executed Joseph R. Wood by lethal injection. Prior to his execution, the State refused to disclose the source, composition, and quality of its lethal injection drugs. Members of the media expressed concern about the people's ability to monitor the executions carried out in their name. *See, e.g.*, Stuart Warner, *Why does The Republic care about lethal injections?*, AZ CENTRAL (June 2, 2014) ("It's the state's job to kill him, but until it does, it's our job to make sure his death is done right.").

7. The State of Arizona used fifteen injections over two hours to execute Mr. Wood. Witnesses described a gasping, painful death. The public still does not know where the drugs came from, how potent they were, or how their quality was assured.

8. The denial of public information about execution methods in Arizona is a recent development.

9. Until 2010, lethal injections in Arizona used a three-drug protocol involving sodium thiopental, pancuronium bromide, and potassium chloride.

10. The Illinois-based pharmaceutical company Hospira was the only FDA approved manufacturer of sodium thiopental during the time the State of Arizona used the drug for its executions. As the only provider of the drug, Hospira was publicly identifiable as its source. Hospira ceased production of sodium thiopental in 2011, causing a shortage of the drug.

11. In response to the shortage, the Arizona Department of Corrections ("ADC") has changed the drug combinations prescribed by its execution protocols at least three times. The ADC never disclosed the source, composition, or quality of the

3

drugs in response to public requests for that information, preventing democratic oversight and discussion of the ADC's execution practices.

12. Several of the Plaintiffs have made formal requests of ADC to inspect and copy records disclosing the source, composition, and quality of drugs used to execute inmates in Arizona.

13. ADC has denied these requests, refusing to allow Plaintiffs to inspect or copy requested records and claiming that the information is "protected."

14. An additional 119 inmates remaining on death row in Arizona face execution by lethal injection. On information and belief, ADC intends to execute these inmates without disclosing anything to the public about the source of the drugs used.

15. Plaintiffs bring this action to challenge ADC's practice of withholding information about the source, composition, and quality of the drugs used in lethal injection executions, as well as the qualifications of the team members chosen to administer the drugs, and to compel ADC to disclose this information to the press and the public. Moreover, Plaintiffs challenge ADC's refusal to permit witnesses to observe the totality of the execution, including whether and when the State administers additional doses of these drugs. ADC's refusal to disclose critical information as to the nature, source, and protocol for administering the drugs violates the qualified right of access to government proceedings and records that is guaranteed to the public by the First and Fourteenth Amendments to the United States Constitution.

## JURISDICTION AND VENUE

16. This case arises under the United States Constitution and presents a federal question within this Court's jurisdiction under Article III of the Constitution and 28 U.S.C. § 1331 and § 1343(a)(3). This action is brought pursuant to 42 U.S.C. § 1983.

17. This Court has authority to grant declaratory relief pursuant to 28 U.S.C. § 2201(a), § 2202, and Federal Rule of Civil Procedure 65.

18. Venue is proper under 28 U.S.C. § 1391(b). All Defendants are being sued in their official capacity, and their official places of business are all located within the

4

State of Arizona. The events giving rise to this Complaint are part of an unconstitutional state policy, practice, or custom.

**PARTIES**

19. Plaintiff Guardian US is a digital news service organized in New York, where it is based, as Guardian News and Media LLC. It was established in 2011 to cover US and international news for an American audience as the US online presence of the London-based newspaper *The Guardian*, one of Britain's oldest and most respected news outlets. Guardian US produces news articles, opinion, live-blogs, and interactive and multimedia content that currently reaches over 20 million online US readers each month. Guardian US has reported extensively on the death penalty, including Arizona's refusal to disclose information about its lethal injection drugs and its subsequent execution of Joseph R. Wood.

20. Plaintiff The Associated Press is a nonprofit news cooperative incorporated and based in New York. AP is this nation's oldest and largest news organization, serving as a source of news, photos, graphics, audio, and video for more than one billion people per day. AP operates a bureau in Phoenix and provides news and content to radio stations, TV stations, and newspapers located throughout Arizona. AP has reported extensively on the U.S. death penalty, and its reporters regularly witness executions as surrogates for the public. An AP reporter witnessed Arizona's recent execution of Joseph R. Wood.

21. Plaintiff *The Arizona Republic* is a division of Phoenix Newspapers, Inc., whose ultimate parent corporation is Gannett Company, Inc., a media holding company incorporated and headquartered in Virginia. *The Arizona Republic* is the largest newspaper in Arizona and is among the twenty top newspapers in daily circulation in the United States. *The Arizona Republic* has provided thorough coverage of Arizona's execution policies, including Arizona's improper obtainment of drugs from foreign suppliers and its refusal to disclose its drug sources. A reporter from *The Arizona Republic* witnessed Arizona's execution of Joseph R. Wood.

5

22. Plaintiff KPNX-TV Channel 12 is a division of Multimedia Holdings Corporation, whose ultimate parent corporation is Gannett Company, Inc., a media holding company incorporated and headquartered in Virginia. KPNX reaches 2.3 million viewers every week and is among the top media companies in the Phoenix area. KPNX provided coverage of the execution of Joseph R. Wood, in collaboration with *The Arizona Republic* reporters.

23. Plaintiff KPHO Broadcasting Corporation, the licensee of television stations KPHO and KTVK, is a wholly owned subsidiary of Meredith Corporation, a media company incorporated and headquartered in Des Moines, Iowa. KPHO Broadcasting Company is among the top media companies in the Phoenix area. KPHO provided coverage of the Joseph R. Wood execution.

24. Plaintiff Star Publishing Company does business as the *Arizona Daily Star*. Star Publishing is a subsidiary of Lee Enterprises, Inc., a Delaware corporation. The *Daily Star* is a newspaper of record in the Tucson area. The *Daily Star* provided coverage of the Joseph R. Wood execution.

25. Defendant Charles L. Ryan is the Director of the Arizona Department of Corrections ("ADC") and is being sued in his official capacity. The ADC has the authority to order the disclosure of the information sought by Plaintiffs.

26. Defendant Thomas C. Horne is the Attorney General of the State of Arizona and is being sued in his official capacity. Upon information and belief, the Attorney General's office under Horne's direction has the authority to review the ADC's public records disclosures.

## **VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

27. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 26 as though more fully set forth herein.

6

*Plaintiffs' Right Under the Constitution*

28. The public has an affirmative, enforceable right of access to certain government proceedings and records that is secured by the First and Fourteenth Amendments to the United States Constitution.

29. This constitutional right of public access attaches specifically where (a) certain government proceedings or records historically have been open to the public, and (b) public access to these proceedings or records plays a significant positive role in the functioning of government. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980); *see also Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986); *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984); *Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U.S. 596 (1982). This constitutional access right attaches to information about the source, composition, and quality of drugs that have been or will be used by a State to execute an individual in the name of the People, as well as the qualifications of those who administer the drugs and the protocols determining how they are administered. The constitutional access right also attaches to the execution itself, and the public, through designated press representatives, has a right to view the entirety of an execution.

30. Historically, executions—and information concerning how executions are conducted—have been open to the public. As the United States Court of Appeals for the Ninth Circuit has noted, "[h]istorically . . . [e]xecutions were fully open events in the United States[.]" *Cal. First Amendment Coal. v. Woodford*, 299 F.3d 868, 875 (9th Cir. 2002). Hangings, for example, were conducted using scaffolds that were specifically constructed to accommodate large crowds. *See* STUART BANNER, THE DEATH PENALTY: AN AMERICAN HISTORY 10-11 (2002). The citizens who attended and witnessed such executions often numbered in the thousands. *See* Deborah Denno, *Is Electrocution an Unconstitutional Method of Execution? The Engineering of Death over the Century*, 35 WM. & MARY L. REV. 551, 564 (1994). The public also had access to detailed information about the size, quality, and production of the rope used in hangings. *See,*

7

*e.g., The Ropes Made, A peculiar mark of identification upon each*, CINCINNATI ENQUIRER (Mar. 16, 1897) at 12; *Hanged, Jackson and Walling Jerked Into Eternity*, SPOKANE DAILY CHRON. (Mar. 20, 1897) at 1.

31. Even after executions ceased to be public events, officials in many states continued to make information about how convicts were executed publicly available. States disclosed the manufacturer of the poison gas used in the first gas chamber executions. *See* SCOTT CHRISTIANSON, LAST GASP: THE RISE AND FALL OF THE LETHAL CHAMBER 76-83 (2010). States disclosed facts about the structure and operation of gas chambers and the qualifications of prison officials responsible for executions. *See* Deborah Denno, *Is Electrocution an Unconstitutional Method of Execution? The Engineering of Death over the Century*, 35 WM. & MARY L. REV. 551, 651 (1994). States also disclosed the procedures for operating lethal injection machines. *See Cold Gray Stone Gas Chamber Carries out Death Penalty*, SUNDAY NEWS & TRIB. (Sept. 27, 1957) at 2.

32. In Arizona, the continued right of the public to witness executions is codified in Ariz. Rev. Stat. Ann. § 13-758, which provides that "at least twelve reputable citizens" must be invited "to be present at the execution." Journalists routinely serve as witnesses at executions as proxies for the general public.

33. Public access to such information about the manner by which convicted criminals are put to death enhances the proper functioning of the execution process and promotes public confidence in the integrity of the criminal justice system. *See, e.g., Cal. First Amendment Coal.*, 299 F.3d 868 (holding that a prison regulation barring public viewing of the execution procedures that preceded the actual administration of lethal injection impermissibly restricted the public's First Amendment right to view executions).

34. Citizens need information about these executions in order to "determine whether lethal injection executions are fairly and humanely administered, or whether they ever can be." *Cal. First Amendment Coal*., 299 F.3d at 876. The disclosure of the

relevant information reduces the risk that improper, ineffective, or defectively prepared drugs are used; it allows public oversight of the types of drugs selected to cause death and the qualifications of those manufacturing the chosen drugs; and it promotes the proper functioning of everyone involved in the execution process.

35. The Constitution compels access to historically available information about the source, composition, and quality of drugs that have been or will be used in lethal injection executions because disclosure promotes the functioning of the process itself and is essential for democratic oversight. The public cannot meaningfully debate the propriety of lethal injection executions if it is denied access to this essential information about how individuals are being put to death by the State.

36. The constitutional right of public access encompasses a qualified right to know the source, composition, and quality of drugs, as well as the protocols, that have been or will be used in lethal injection executions and to view the entirety of an execution. No proper basis exists for Defendants to abridge the public's constitutional right of access to this information and to the execution.

*Intentional Violation of Plaintiffs' Constitutional Rights*

37. Prior to 2010, information about the State of Arizona's lethal injection drugs was routinely available to the public. During that time, the ADC obtained sodium thiopental—the drug called for in its lethal injection protocol—from the pharmaceutical company Hospira, the only FDA approved manufacturer of the drug. As the sole approved manufacturer, Hospira was publicly identifiable as the source of the drug.

38. Since 2010, the State of Arizona has consistently refused to provide information about the source, composition, and quality of the drugs called for in its lethal injection protocols.

39. In October 2010, the ADC "refused to disclose to [a death row] Plaintiff *any* information regarding [sodium thiopental]," a drug used in its lethal injection protocol, and "maintained their refusal to disclose even after a direct Court order

9

requiring 'immediate' disclosure." *Landrigan v. Brewer*, 2010 WL 4269559, at *8 (D. Ariz. Oct. 25, 2010).

40. On October 26, 2010, the ADC executed Jeffrey Landrigan without disclosing the source, composition, and quality of its lethal injection drugs. The press eventually discovered that the drugs had been imported from "[a] pharmaceutical supply house operating out of a storefront driving school in west London." Michael Kiefer, *BBC: London storefront supplied Arizona execution drug*, AZ CENTRAL (Jan. 9, 2011). The Department of Justice then informed the ADC that its import and use of the sodium thiopental from its London source would violate the Federal Controlled Substance Act. *See West v. Brewer*, 2011 WL 6724628, at *5 (D. Ariz. Dec. 21, 2011).

41. In 2011, the ADC adopted a new one-drug execution protocol using pentobarbital. Again, the ADC refused to disclose information about the lethal injection drugs, including manufacturer, lot number, or expiration date. *See Schad v. Brewer*, 2013 WL 5551668, at *1 (D. Ariz. Oct. 7, 2013). The Federal District Court ordered the ADC to provide the requested information. *Id*. at *10.

42. In 2014, the ADC adopted the two-drug protocol involving midazolam and hydromorphone. Joseph Wood, a death row inmate, requested the name and source of the drugs to be used in his execution. The ADC refused to disclose the requested information. The Court of Appeals for the Ninth Circuit granted Wood a preliminary injunction, ordering the ADC to provide the name and provenance of the drugs to be used in the execution. *Wood v. Ryan*, 2014 WL 3563348, at *10 (9th Cir. July 19, 2014), *vacated*, 2014 WL 3600362 (July 22, 2014).

43. At Wood's execution, the ADC administered *fifteen* doses of the two-drug cocktail to Wood. The ADC administered these additional doses outside of view of the witnesses to the execution. Wood's lawyers sought an emergency injunction, and the ADC falsely represented to the Court that only two injections—not the twelve that had been made at that point—had been administered. The ADC's extreme divergence from

published protocol and attempt to cover up that divergence strongly undermines the value of the little information it has provided.

44. In September 2014, the Guardian and AP requested that the ADC disclose the source, composition, and quality of its lethal injection drugs. The ADC refused.

45. Upon information and belief, the ADC is purposefully avoiding disclosure of information otherwise required to be public under the First and Fourteenth Amendments.

46. By protecting the identity of its commercial drug suppliers, the ADC is intentionally thwarting the right of interested parties to engage in constitutionally protected activity, as well as the First Amendment right of Plaintiffs to report on the identity and qualifications of drug suppliers, to report on the quality and efficacy of the drugs used, or to report on deviations from the intended protocol.

47. ADC's refusal to disclose the information sought in Plaintiffs' requests violated, and continues to violate, Plaintiffs' right of public access guaranteed by the First and Fourteenth Amendments to the United States Constitution.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment in their favor and:

(a) Declare that Plaintiffs have a public right of access protected by the First and Fourteenth Amendments to the United States Constitution to information about the source, composition, and quality of the lethal injection drugs that have been, are, or will be used in executions, as well as the qualifications of the team members selected to perform the execution;

(b) Declare that Plaintiffs have a public right of access protected by the First and Fourteenth Amendments to the United States Constitution to see and hear the totality of an execution, including whether the State is administering additional doses of lethal injection drugs;

11

(c) Declare that the Defendants' refusal to disclose information about the source, composition, and quality of its lethal injection drugs, as well as the qualifications of the team members selected to perform executions violated Plaintiffs' constitutional right of public access;

(d) Declare that the Defendants' refusal to permit witnesses to see and hear the totality of executions, including the State's administration of additional doses of lethal injection drugs, violated Plaintiffs' constitutional right of public access;

(e) Preliminarily and permanently enjoin Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction from withholding information about the source, composition, and quality of the lethal injection drugs that have been, are, or will be by the state of Arizona, as well as information about the qualifications of the team members chosen to administer those drugs;

(f) Preliminarily and permanently enjoin Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction from restricting access to the totality of the execution, including when and whether the State is administering additional doses of lethal injection drugs;

(g) Order Defendants to pay Plaintiffs' costs and attorney fees pursuant to 42 U.S.C. § 1988; and

(h) Grant Plaintiffs such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 23rd day of October, 2014.

         BALLARD SPAHR LLP


         By: s/ David J. Bodney
          David J. Bodney
          Christopher Moeser
          1 East Washington Street, Suite 2300
          Phoenix, AZ 85004-2555

         Attorneys for Plaintiffs

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400