MARK BRNOVICH
ATTORNEY GENERAL
(FIRM STATE BAR NO. 14000)

JEFFREY L. SPARKS (027536)
ASSISTANT ATTORNEY GENERAL
CAPITAL LITIGATION SECTION
1275 W. WASHINGTON
PHOENIX, AZ 85007
TELEPHONE: (602) 542–4686
CADocket@azag.gov

ATTORNEYS FOR DEFENDANT

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

Guardian News & Media LLC; The Associated Press; *The Arizona Republic*, a division of Phoenix Newspapers, Inc.; KPNX-TV Channel 12, a division of Multimedia Holdings Corporation; and Star Publishing Company d/b/a/ *Arizona Daily Star*,

Plaintiffs,

-vs-

Charles L. Ryan, Director of the Arizona Department of Corrections,

Defendant.

No. 2:14–cv–02363–GMS

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Assigned to the Hon. G. Murray Snow

Defendant Charles L. Ryan, Director of the Arizona Department of Corrections, hereby moves for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure and L. R. Civ. P. Rule 56.1. Defendant's motion is supported by the following Memorandum of Points and Authorities and concurrently filed Defendant's Statement of Facts ("DSOF").

. . .

. . .

DATED this 9th day of October, 2015.

Respectfully submitted,

MARK BRNOVICH
ATTORNEY GENERAL

JOHN R. LOPEZ, IV
SOLICITOR GENERAL

LACEY STOVER GARD
CHIEF COUNSEL

s/JEFFREY L. SPARKS
ASSISTANT ATTORNEY GENERAL

ATTORNEYS FOR DEFENDANT

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. BACKGROUND.

Plaintiffs, media organizations, filed this action pursuant to 42 U.S.C. § 1983, seeking equitable and injunctive relief for alleged violations of their right of access to certain government proceedings. (Plaintiffs' Complaint, at ¶ 1.) Specifically, Plaintiffs contend that the public enjoys a First Amendment right of access that requires the Arizona Department of Corrections ("ADC") to disclose the "source, composition, and quality of the drugs it uses for lethal injection executions, as well as the qualifications of those chosen to administer the drugs," and that the First Amendment permits the public to "observe the totality of executions, including whether and when the State administers additional doses of these drugs." (Plaintiffs' Complaint, at ¶¶ 1, 15.) They claim that ADC's refusal to disclose this information about lethal injection drugs and the employees who administer them, and the public's inability to observe, during an execution, whether and when ADC administers additional doses of drugs, violates the public's First Amendment right of access. (Plaintiffs' Complaint, at ¶ 15.)

Defendant asserts that, although the Ninth Circuit has held that the public enjoys a qualified First Amendment right of access to view executions, *Cal. First Amendment Coal. v. Woodford*, 299 F.3d 868 (9th Cir. 2002), the First Amendment is not the equivalent of a Freedom of Information Act providing a general right of access to government-held information such as that sought by Plaintiffs. This case presents no factual dispute, but only a legal question: whether Plaintiffs, as members of the general public, are entitled under the First Amendment to the information which they seek. As a matter of law they are not, and Defendant is therefore entitled to summary judgment.

### II. STANDARD FOR SUMMARY JUDGMENT.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact involves "disputes over facts that might affect the outcome of the suit under the governing law," not "[f]actual disputes over facts that are irrelevant and unnecessary." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion and to identify the parts of the record that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion for summary judgment is properly supported, the nonmoving party must then go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(c) and 56(e)). When reviewing a motion for summary judgment, the court "must draw all justifiable inferences in favor of the nonmoving party." *Anderson*, 477 U.S. at 255. However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50.

## III. FACTUAL BACKGROUND—EXECUTIONS IN ARIZONA.

Executions in Arizona are carried out with a high degree of openness and transparency. Department Order 710, ADC's execution protocol ("the protocol"), sets forth in precise detail the procedures by which executions are to be carried out in Arizona and is publicly available on ADC's website. (DSOF at ¶¶ 1–3.) For example, the protocol sets forth required qualifications for the personnel who assist in carrying out executions. (DSOF at ¶¶ 4–5.) Members of the IV Team, who are responsible for inserting the IV catheters, ensuring the lines are functioning properly throughout the procedure, supervising the mixing of the chemicals and preparation of the syringes, and monitoring the inmate during the procedure, must include two or more physicians,

physician assistants, nurses, emergency medical technicians, paramedics, or military corpsmen or other certified or licensed personnel including those trained in the United States military. (DSOR at ¶¶ 5–6.) All IV Team members also must be "currently certified or licensed within the United States to place IV lines." (DSOF at ¶ 5.) Furthermore, a central femoral venous line will not be used to administer a lethal injection "unless the person placing the line is currently certified or licensed within the United States to place a central femoral line." (DSOF at ¶ 5.)

The protocol also sets forth the drugs or drug combinations that may be used in an execution, including the amount of each drug to be placed in each syringe. (DSOF at ¶ 7.) At least 20 days before a scheduled execution date, ADC provides written notice of which lethal chemical or chemicals will be used to perform a lethal injection execution. (DSOF at ¶ 8.) Although ADC has traditionally made available information concerning what drugs will be used in an execution, as well as their content, quality, FDA-approval status, expiration dates, and whether they are from a foreign or domestic source, the identities of drug suppliers and information that could identify them are confidential pursuant to A.R.S. § 13–757(C).[1] (DSOF at ¶ 9.) Similarly, the identities of personnel involved in carrying out an execution, and information that would identify them, is also confidential. A.R.S. § 13–757(C).

Pursuant to Arizona law, executions are also witnessed by members of the public, including citizens and members of the media. (DSOF at ¶ 10.) And following an execution, documents regarding what occurred, such as logs indicating whether and when additional doses of drugs were administered, are routinely disclosed as public records. (DSOF at ¶¶ 11–12.)

---

[1] Arizona Revised Statutes § 13–757(C) states: "The identity of executioners and other persons who participate or perform ancillary functions in an execution and any information contained in records that would identify those persons is confidential and is not subject to disclosure pursuant to [Arizona public records law]."

In sum, executions in Arizona are conducted with openness and transparency, and the only execution-related records kept confidential are those which would identify "executioners and other persons who participate or perform ancillary functions in an execution." *See* A.R.S. § 13–757(C).

## IV. DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT BECAUSE, AS A MATTER OF LAW, THE FIRST AMENDMENT DOES NOT GRANT PLAINTIFFS ACCESS TO THE INFORMATION THEY SEEK.

Plaintiffs claim a First Amendment right of access to information within ADC's possession, which includes the "source, composition, and quality of the drugs [ADC] uses for lethal injection executions, as well as the qualifications of those chosen to administer the drugs," and to observe "whether and when [ADC] administers additional doses" of drugs during an execution. (Plaintiffs' Complaint, at ¶¶ 1, 15.) But although the public enjoys a limited First Amendment right to *view* an execution, that right does not extend, as a matter of law, to the information Plaintiffs seek here.

### A. *Legal principles governing claims of a First Amendment right to government information.*

"Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control." *Houchins v. KQED*, 438 U.S. 1, 15 (1978) (plurality opinion); *see also Los Angeles Police Dep't v. United Reporting*, 528 U.S. 32, 40 (1999) ("[W]hat we have before us is nothing more than a governmental denial of access to information in its possession. California could decide not to give out arrestee information at all without violating the First Amendment."). The Supreme Court has thus stated that "[t]he right to speak and publish does not carry with it the unrestrained right to gather information. . . . For example, the prohibition of unauthorized entry into the White House diminishes the citizen's opportunities to gather information he might find relevant to his opinion of the way the country is being run, but that does not make entry into the White House a First Amendment right." *Zemel v. Rusk*, 381 U.S. 1, 17 (1965). Accordingly, the Court "has

repeatedly made clear that there is no constitutional right to obtain all the information provided by FOIA laws." *McBurney v. Young*, __ U.S. __, 133 S. Ct. 1709, 1718 (2013). As a result of these principles, "[t]he government may classify certain information, establish and enforce procedures ensuring its redacted release, and extend a damages remedy against the government or its officials where the government's mishandling of sensitive information leads to its dissemination." *Florida Star v. B.J.F.*, 491 U.S. 524, 534 (1989). Simply put, "[t]here is no constitutional right to have access to particular government information, or to require openness from the bureaucracy." *Houchins*, 438 U.S. at 14.

The Supreme Court has also held that, although the First Amendment does not create a right to government-held information, it includes a qualified right of public access to some governmental *proceedings*. It has recognized a right of access to preliminary hearings in a criminal prosecution, *Press-Enterprise Co. v. Superior Court ("Press-Enterprise II")*, 478 U.S. 1, 8–14 (1986); voir dire, *Press-Enterprise Co. v. Superior Court ("Press-Enterprise I")*, 464 U.S. 501, 510–11 (1984); the testimony of the child victim of a sex offense, *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603–11 (1982); and criminal trials in general, *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 579 (1980). Applying these cases, the Ninth Circuit has recognized a qualified First Amendment right access to "criminal proceedings and documents filed therein." *CBS, Inc. v. United States Dist. Court*, 765 F.2d 823, 825 (9th Cir. 1985). This right of access has been applied to: transcripts of closed hearings that occurred during jury deliberations, *Phoenix Newspapers, Inc. v. United States Dist. Court*, 156 F.3d 940, 949 (9th Cir. 1998); plea agreements and related documents, *Oregonian Publ'g Co. v. United States Dist. Court*, 920 F.2d 1462, 1465–66 (9th Cir. 1990); pretrial release proceedings and documents, *Seattle Times Co. v. United States Dist. Court*, 845 F.2d 1513, 1517 (9th Cir. 1988); and pretrial suppression hearings, *United States v. Brooklier*, 685 F.2d 1162, 1170–71 (9th Cir. 1982). These cases can be summarized as recognizing a right of access to courtroom proceedings and related court-filed documents.

The Ninth Circuit has also extended the public's First Amendment "right of access to criminal proceedings and documents filed therein" to include the right to view executions. *Cal. First Amendment Coal.*, 299 F.3d at 874 (quoting *CBS*, 765 F.2d at 825). The Court reached this conclusion after addressing the considerations set forth in *Press-Enterprise II* for determining whether the public has a right of access to a particular government proceeding: (1) "whether the place and process have historically been open to the press and general public," and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Cal. First Amendment Coal.*, 299 F.3d at 875 (quoting *Press-Enterprise II*, 478 U.S. at 8–9). These considerations weighed in favor of a public right to view executions because "[h]istorically, executions were open to all comers" and "[i]ndependent public scrutiny … plays a significant role in the proper functioning of capital punishment." *Id.* at 875, 876.

**B. *The First Amendment does not grant Plaintiffs the right to compel ADC to turn over the information they seek.***

It is the Supreme Court's jurisprudence consistently rejecting a First Amendment right of access to government held-information—not the Ninth Circuit's recognition of a right to view executions—that applies to Plaintiffs' claims seeking the source of lethal injection drugs, qualifications of execution personnel, and whether and when additional doses are administered during a lethal injection. The Court's decision in *California First Amendment Coalition* acknowledges that the public enjoys the right to view an execution and nothing more. The Ninth Circuit recognized no right to any documents or governmental information related to the lethal injection execution. *See Cal. First Amendment Coal.*, 299 F.3d at 877 ("We therefore hold that the public enjoys a First Amendment right to view executions from the moment the condemned is escorted into the execution chamber . . . ."). The Ninth Circuit certainly did not create a constitutional right to information concerning the drug manufacturer or the source of the drugs, or information about personnel taking part in the execution process.

Illustrating the basic distinction between access to proceedings and the right to obtain information, the Supreme Court in *Nixon v. Warner Communications Inc.*, 435 U.S. 589, 609 (1978), recognized the public's First Amendment right to attend a criminal trial, but concluded that this right did not include access to exhibits displayed in court but kept in the custody of the court clerk. Similarly, the public's First Amendment right to *attend* an execution does not equate to a First Amendment right to require production of any information regarding the execution process; that is, Plaintiffs' right to view an execution "is no more than a right to attend the [execution] and report on their observations." *Radio & Television News Ass'n of So. Cal. v. Dist. Ct. for Cent. Dist. of Cal.*, 781 F.3d 1443, 1447 (9th Cir. 1986). Thus, because Plaintiffs here do not seek access to a criminal *proceeding*, but rather access to *information* in the government's possession, their claims fail as a matter of law. *See Houchins*, 438 U.S. at 15; *see also McBurney*, 133 S. Ct. at 1718; *Los Angeles Police Dep't*, 528 U.S. at 40; *Zemel*, 381 U.S. at 17.

Furthermore, the First Amendment right of access is inapplicable to Plaintiffs' claims because unlike the courtroom proceedings to which that right has been applied, there are no "documents filed therein" with regard to an execution, which is simply the carrying out of a legal judgment. Plaintiffs do not seek access to a public proceeding or public documents filed within a proceeding, but instead attempt to use the First Amendment as a discovery tool or a FOIA request for government-held information, an approach rejected by the Supreme Court. *See McBurney*, 133 S. Ct. at 1718. ADC faithfully complies with the public's First Amendment right to view executions by conducting them in the presence of witnesses. *See Cal. First Amendment Coal.*, 299 F.3d at 874. There is no authority, however, extending that right beyond the public's ability to view an execution that would require ADC to publicize all execution-related information in its possession.

Directly to the contrary, federal and state courts have resoundingly rejected the idea that the First Amendment grants the public a right of access to information

surrounding executions. *See Zink v. Lombardi*, 783 F.3d 1089, 1112 (8th Cir. 2015) (First Amendment right of access to certain criminal proceedings does not extend to information regarding the source of the drug to be used in an execution), *cert. denied*, --- S. Ct. ----, 2015 WL 1607160 (June 30, 2015) (mem.); *Wellons v. Comm'r, Ga. Dep't of Corrections*, 754 F.3d 1260, 1267 (11th Cir. 2014) ("Neither the Fifth, Fourteenth, or First Amendments afford Wellons the broad right 'to know where, how, and by whom the lethal injection drugs will be manufactured,' as well as 'the qualifications of the person or persons who will manufacture the drugs, and who will place the catheters.'"), *cert. denied*, 134 S. Ct. 2838 (2014) (mem.); *Phillips v. DeWine*, No. 2:14-cv-2730, 2015 WL 667602, *12 (S.D. Ohio Feb. 17, 2015) (no First Amendment right to information concerning lethal injection drugs); *Frazier v. Thomas*, No. 2:13–cv–781–WKW, 2015 WL 65096, *2 (M.D. Ala. Jan. 5, 2015) (same); *Owens v. Hill*, 758 S.E.2d 794, 805–06 (Ga. 2014) (no First Amendment right to information regarding acquisition of execution drugs), *cert. denied*, 135 S. Ct. 449 (2014) (mem.); *West v. Schofield*, 460 S.W.3d 113, 124 (Tenn. 2015) ("[T]here is neither a statutory nor a constitutional barrier to the adoption of a common-law privilege that would prohibit the disclosure in civil litigation of the identities of those persons involved in the execution of condemned inmates."); *but see Schad v. Brewer*, No. CV-13-2001-PHX-ROS, 2013 WL 5551668 (D. Ariz. Oct. 7, 2013) (holding that the public enjoys a First Amendment right to know source of lethal injection drugs).

And although a Ninth Circuit panel in *Wood v. Ryan*, 759 F.3d 1076 (9th Cir. 2014), stayed an execution, citing "serious questions" as to the merits of the plaintiff's claim that the First Amendment entitled the public to information regarding the source of drugs used in an execution and the individual qualifications of the medical personnel, *id.* at 1088, the Supreme Court promptly vacated the stay and reversed the Ninth Circuit's ruling. *Ryan v. Wood*, 135 S. Ct. 21 (2014) (mem). Other than the vacated opinion in *Wood*, not a single appellate court has found a First Amendment right of access to the type of information sought in this case.

The cases rejecting a First Amendment right to information surrounding executions are also consistent with the Third Circuit's recognition, in a government-held information case outside the execution context, that the First Amendment does not compel disclosure of information:

> The First Amendment . . . seeks to promote the ideal of an informed electorate by barring government interference with the flow of information and ideas to the public. The founding fathers intended affirmative rights of access to government-held information, other than those expressly conferred by the Constitution, to depend upon political decisions made by the people and their elected representatives. This conclusion finds support in the text of the First Amendment, the historical gloss on that text, and the First Amendment caselaw.

*Capital Cities Media, Inc. v. Chester*, 797 F.2d 1164, 1167 (3d Cir. 1986). Thus, the Arizona legislature's decision to make the source of drugs and identities of execution personnel confidential in A.R.S. § 13–757(C) is a result of the democratic process that sits outside the First Amendment because "[n]either the free speech clause nor the structure of the government described by the Constitution yields any principled basis for deciding which government information must be made available to the citizenry and which need not." *Capital Cities Media, Inc.*, 797 F.2d at 1171; *see also Phillips*, 2015 WL 667602, *10 (relying on *Capital Cities Media* in rejecting First Amendment claim to information regarding source of execution drugs). In other words, Plaintiffs' claim fails because it contorts the public's First Amendment right to *view* a governmental proceeding—*i.e.*, an execution—into an alleged right to compel the government to give over information, a purpose beyond the scope of the First Amendment.[2]

Taken to its logical conclusion, Plaintiffs' request for an unprecedented and unprincipled expansion of the right of access would cause the exception to "swallow the

---

[2] Furthermore, although Plaintiffs request the "qualifications of the team members selected to perform the execution," ADC's public protocol includes the required minimum qualifications for the members of the IV Team, who are responsible for inserting catheters into the inmate and supervising the mixing and administration of drugs. (DSOF at ¶¶ 3–4.)

default rule" that there is no First Amendment right to information in the government's control. *Wood*, 759 F.3d at 1093 (Bybee, J., dissenting). For example, in the context of criminal trials, an expansion of the First Amendment right of access could conceivably open to public scrutiny all documents in the prosecutor's possession, jury pool records, jurors' personal information, jury deliberations, and a trial judge's notes. *Id.* at 1093–94 (Bybee, J., dissenting). Such an expansive First Amendment right would render superfluous the federal Freedom of Information Act and state public records laws because whether the public had a right to any particular information in the government's possession would depend solely upon the test set forth in *Press-Enterprise II*. The result would be a "sea of never-ending litigation," requiring "the courts to legislate categories of exclusions" from First Amendment access "without the benefit" of the political process. *Capital Cities Media, Inc.*, 797 F.2d at 1172. In other words, the judiciary, rather than the legislatures, would become the sole arbiters of what government information must be public and what may be kept confidential. Such an expansive right of access would have wide-ranging effect on all government agencies and information related to any policy decisions of the agency. But such an ill-advised approach is foreclosed by clear Supreme Court precedent holding that there is no general First Amendment right to government-held information. *Houchins*, 738 U.S. at 9, 11.

Lastly, although Plaintiffs frame their desire to know "whether and when" additional doses of drugs are administered during an execution as part of their right to observe an execution, this request is more accurately characterized as seeking government-held information. ADC (and Arizona law) recognizes the public's right to view executions by providing for the attendance of witnesses at Arizona executions. (DSOF at ¶ 10.) The right to view an execution recognized in *California First Amendment Coalition* "is no more than a right to attend the [execution] and report on their observations." *See Radio & Television News Ass'n of So. Cal.*, 781 F.3d at 1447. Any part of the execution process that the witnesses cannot visually or aurally observe—such as whether, when, and the number of doses that is administered—thus falls outside

the scope of the right to view the executions and within the realm of information regarding the execution process, information to which Plaintiffs enjoy no constitutional right. Nothing in *California First Amendment Coalition* mandates a right to know whether and when "additional doses" of drugs are administered. As with the source of execution drugs and qualifications of execution personnel, the First Amendment does not compel ADC to publicly disclose whether and when additional doses of drugs are administered during an execution.[3]

As a matter of law, the First Amendment right to view an execution does not grant Plaintiffs, as members of the public, the right to compel ADC to disclose the "source, composition, and quality of the drugs it uses for lethal injection executions," "the qualifications of those chosen to administer the drugs," or "whether and when [ADC] administers additional doses" of drugs. (Plaintiffs' Complaint, at ¶¶ 1, 15.) Put simply, Plaintiffs do not state a First Amendment right-of-access claim. Accordingly, this Court should join the overwhelming majority of courts that have rejected the novel expansion of the First Amendment asserted by Plaintiffs and grant Defendant's motion for summary judgment.

. . .

. . .

. . .

---

[3] Alternatively, even if the First Amendment right to view executions encompassed the right to know whether and when additional doses of drugs are administered, Plaintiffs cannot establish a violation of that right. Records pertaining to executions, including logs detailing the administration of drugs, are generally a matter of public record under state law and are routinely made public after an execution (DSOF at ¶ 11)—Defendant is unaware of any exception that would exclude this information, subject to redaction of identifying information under A.R.S. § 13–757(C), from disclosure under Arizona's public records laws. For example, only a few days after the execution of Joseph R. Wood on July 24, 2014, one of the Plaintiffs in this case reported that Wood received 15 doses of drugs during his execution. (DSOF at ¶ 12.) Consequently, even if Plaintiffs possessed a First Amendment right to observe "whether and when" ADC administers additional doses of drugs during an execution, Defendant is still entitled to summary judgment because Plaintiffs cannot establish a violation of that right.

## V. CONCLUSION.

For the reasons above, Defendant is entitled to summary judgment against Plaintiffs.

Respectfully submitted,

John R. Lopez, IV
Solicitor General

Lacey Stover Gard
Section Chief Counsel

s/Jeffrey L. Sparks________
Assistant Attorney General

I hereby certify that on October 9, 2015, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

David J. Bodney
Craig C. Hoffman
Ballard Spahr LLP
1 E. Washington St., Ste. 2300
Phoenix, AZ 85004-2555

David A. Schulz
Jonathan Manes
Media Freedom & Information Access
Clinic – Yale Law School
P.O. Box 208215
New Haven, CT 06520

Attorneys for Plaintiffs

s/Liz Gallagher

4557128